IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAM C. YU                                *
                                         *
        v.                               *       Civil Case No. ELH-13-1507
                                         *
COMMISSIONER, SOCIAL SECURITY            *
                                         *
                          *************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions and Ms. Yu's Reply. ECF Nos. 20, 22, 25. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied and the case be remanded to the Commissioner.

Ms. Yu applied for Disability Insurance Benefits on July 14, 2009, alleging a disability onset date of December 2, 1999. (Tr. 128-34). At the hearing, Ms. Yu amended her onset date to August 23, 2004, making the relevant period the roughly thirteen months between August 23, 2004 and her date last insured, September 30, 2005. (Tr. 38-39). Her claim was denied initially on March 26, 2010, and on reconsideration on October 25, 2010. (Tr. 69-71, 74-75). An Administrative Law Judge ("ALJ") held a hearing on November 17, 2011 (Tr. 35-66), and subsequently denied benefits to Ms. Yu in a written opinion dated January 26, 2012 (Tr. 26-34). The Appeals Council declined review, (Tr. 5-9), making the ALJ's decision the final, reviewable

decision of the agency.

The ALJ found that Ms. Yu suffered from the severe impairment of ulcerative colitis. (Tr. 28). Despite this impairment, the ALJ determined that Ms. Yu retained the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) except could lift up to 25 pounds frequently and 50 occasionally, sit 2 hours, stand for six hours, during an eight-hour day, needing jobs requiring little communication, reading, or writing, and allowing her to have ready access to the bathroom when needed." (Tr. 30). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Yu could perform, and that she was not therefore disabled. (Tr. 33).

Ms. Yu disagrees. She presents four arguments on appeal. First, she argues that the ALJ erred by failing to heed her request to submit interrogatories to a medical expert. Pl.'s Mot. 13-16. Second, she argues that the ALJ improperly assessed her credibility. *Id.* at 16-18. Third, Ms. Yu suggests that the ALJ violated Social Security regulations by failing to consider her cultural background and linguistic limitations in a purported non-compliance determination. *Id.* at 18-20. Finally, Ms. Yu contends that the ALJ failed to include all of her limitations in the hypothetical presented to the VE. *Id.* at 20-22. Each enumerated argument lacks merit and is addressed below. However, I find that the ALJ did not provide substantial evidence supporting his conclusion that Ms. Yu was capable of lifting 25 pounds frequently and 50 pounds occasionally, so as to be capable of performing medium work. *See* Tr. 30. Accordingly, remand is appropriate.

Initially, it is worth noting that the relevant period for which Ms. Yu was required to establish disability is very narrow. Given Ms. Yu's amended onset date and date last insured

("DLI"), the relevant time period stretches from August 23, 2004 to September 30, 2005. Ms. Yu's medical record, however, is devoid of any treatment records from 1999 to 2008. Therefore, nearly all of Ms. Yu's arguments stem from whether the ALJ properly concluded that her existing medical records failed to establish disability during the relevant period.

Ms. Yu first argues that the ALJ should have consulted a medical expert because her disability onset date was ambiguous, due to a lack of treatment records from November, 1999 to March, 2008. Pl.'s Mot. 13-16; Pl.'s Reply 1-7. Ms. Yu relies on Social Security Ruling ("SSR") 83-20 and *Bailey v. Chater*, 68 F.3d 75 (4th Cir. 1995). SSR 83-20 relates to the establishment of an onset date for an impairment. In *Bailey,* the court addressed the establishment of an onset date and, logically, applied the dictates of SSR 83-20. Here, the ALJ accepted Ms. Yu's amended onset date of August 23, 2004. (Tr. 28). Therefore, neither SSR 83-20 nor *Bailey* applies. The pertinent issue in this case is whether the ALJ should have given retrospective consideration to the medical evidence from the post-DLI period.

The ALJ concluded that "the lack of substantial objective or clinical evidence for the period at issue" warranted the RFC assessment. (Tr. 32). The ALJ reasoned that only current medical evidence supported Ms. Yu's contention that she cannot work because of a frequent need to use the bathroom. *Id.* The ALJ stated that a 2009 field office report, which noted that Ms. Yu used the bathroom every 30 minutes, could not be extrapolated back to 2005 "because the medical evidence at that time [was] not sufficient to support such supposition." *Id.* I agree. The Fourth Circuit has stated that "retrospective consideration of evidence is appropriate 'when the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." *Bird v. Comm'r of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012). Thus, in *Bird*, the Fourth Circuit concluded that an ALJ committed errors of law by

3

failing to consider medical evidence after the claimant's DLI, where the medical evidence showed the claimant's history of post-traumatic stress disorder dating back to a period before the DLI. *Bird*, 699 F.3d at 341-43. The Fourth Circuit noted that the claimant's psychological examinations and "lay evidence" described longstanding behavioral symptoms that were current, but hardly new. *Id.*

Here, Ms. Yu's medical evidence of record post-DLI establishes a frequent need to use the bathroom, but the evidence does not "permit an inference of linkage" to the relevant period. *Bird*, 699 F.3d at 341. Specifically, Ms. Yu's treatment notes from 2008 and beyond describe her symptoms as they existed at the time of the treatment. They fail to make reference to any symptoms she experienced between August, 2004 and September, 2005. In fact, a June, 2008 report by Dr. Kim noted that Ms. Yu was "doing very well on her own" after an ileoanal anastomosis in 1998, and that "the problem that [Ms. Yu] is having *now* is…loose stool coming from the rectum and rectal stricture." (Tr. 264) (emphasis added). Subsequent reports from Dr. Kim in 2010 described Ms. Yu's then-present condition as "chronic diarrhea" and diarrhea every 30 minutes to an hour. (Tr. 277-78); *accord* (Tr. 300-03) (Dr. Kim's September and October 2010 medical reports, which describe Ms. Yu's frequent diarrhea); (Tr. 306) (December, 2009 report by Dr. Shamszad stating that Ms. Yu had "been having a lot of diarrhea"). Ms. Yu's medical evidence of record also includes extensive hospital records predating her amended onset date. Ms. Yu had several ileostomy-related surgeries, *see* (Tr. 391-95, 427-28, 454-56, 506-07, 605-07, 718-19), and in 1999, Dr. Knodell noted her "rather severe diarrhea." *See* (Tr. 227, 235). There is no post-DLI medical evidence in the record which relates back to the period in question. Ms. Yu stated during her hearing that her bowel movements during the relevant period never decreased to fewer than ten per day. (Tr. 49). It is not inconceivable that Ms. Yu's problems

4

with diarrhea, which predated her onset date and postdated her DLI, existed during the relevant period. However, the ALJ's finding that no medical evidence in the record supports the period in question is supported by substantial evidence and should not be disturbed.

Ms. Yu next argues that the ALJ made an improper credibility assessment. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." Id. at 595. The ALJ followed that process in this case. He determined that Ms. Yu's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (Tr. 31). However, he did not find Ms. Yu's testimony concerning the intensity, persistence, and limiting effects of her symptoms to be fully credible. *Id.* The ALJ concluded that Ms. Yu's statements concerning the frequency of her bowel movements were not credible. *Id.* at 31-32. The ALJ highlighted a 1999 post-examination report by Dr. Orkin, in which Dr. Orkin noted that Ms. Yu passes bowel movements each time she feels "the slightest urge," which amounts to approximately ten times a day. (Tr. 920). Dr. Orkin also stated that Ms. Yu was "paranoid" and needed to start "deferring her bowel movements." *Id.* The ALJ appears to suggest that because Dr. Orkin indicated that Ms. Yu was physiologically capable of passing fewer bowel movements, her statements concerning the frequency of her movements were not credible. The lack of objective or clinical evidence relating to the relevant period makes it impossible to determine whether Ms. Yu's statements concerning her condition are indeed credible. Further, an ALJ's credibility determination is afforded great weight. *Shivley v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

5

Therefore, I find that the analysis provided by the ALJ includes substantial evidence to support his adverse credibility conclusion.

Third, Ms. Yu contends that an ALJ is required to consider a claimant's cultural background, linguistic limitations, and other circumstances in any non-compliance determination, pursuant to 20 C.F.R. § 404.1530. The Social Security Administration will consider a claimant's "physical, mental, educational, and linguistic limitations (including any lack of facility with the English language)" when determining whether a claimant has an acceptable reason for failure to follow prescribed treatment. 20 C.F.R. § 404.1530(c). However, the ALJ made no such non-compliance determination here. The ALJ's statement that Ms. Yu's frequent bowel movements were the result of paranoia, did not amount to a finding that she failed to comply with Dr. Orkin's directive to defer her bowel movements. The ALJ's statement was made in the context of the credibility analysis, and his opinion does not rest on non-compliance. *See* (Tr. 32). Still, Ms. Yu suggests that the ALJ should have considered her cultural and language barriers as part of the credibility analysis. Pl.'s Mot. 19. However, Ms. Yu does not explain how her cultural or linguistic limitations affect her case. She notes that while her language barrier had no effect on her ability to follow medical advice, it could have affected her ability to fully understand her condition. Pl.'s Mot. 19; Pl.'s Reply 9. Ms. Yu's argument is merely speculative.

Finally, Ms. Yu argues that the ALJ's hypothetical to the VE did not include her non-exertional limitations. Pl.'s Mot. 20-21. The ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir.

6

1986)). The ALJ's hypothetical described a 55-year-old individual with Ms. Yu's condition, who suffered from "moderate pain and discomfort with infrequent bowel movements during an eight-hour workday." (Tr. 60). The VE concluded that a hypothetical claimant of that description would be capable of finding work. (Tr. 60-62). The hypothetical posed by counsel for Ms. Yu included the additional restriction that "at least once an hour the person needs to be excused to tend to a bowel movement for at least ten minutes." (Tr. 63). The VE then concluded that such a restriction "would not sustain competitive employment." *Id.* As discussed above, the lack of medical evidence supporting Ms. Yu's contention that she needs to use the bathroom with the frequency suggested defeats this argument.

However, the ALJ failed to meet his duty of explanation regarding Ms. Yu's RFC, in which he concluded that Ms. Yu was capable of performing medium work and lifting 25 pounds frequently and 50 pounds occasionally. *See Kotofski v. Astrue*, SKG-09-981, 2010 WL 3655541, at *4 (D. Md. Sept. 14, 2010) ("An ALJ's failure to explain would make the court's function on administrative appeal meaningless because, without such explanation, it would be impossible to ascertain whether the ALJ supported his assertions with substantial evidence."). Given Ms. Yu's age of 55 at the time of her amended onset date, a finding by the ALJ that she was limited to light, unskilled work would have rendered her disabled, pursuant to Grid Rule 202.06. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06. The ALJ's determination that Ms. Yu is capable of performing medium work precluded a finding of disability and requires further explanation of his conclusion that a 55-year-old woman weighing only 120-130 pounds, with Ms. Yu's medical history, could lift the amounts of weight required for medium work. Given that the ALJ failed to support his RFC finding, I recommend remand for a more detailed analysis. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Yu is

not entitled to benefits was correct or incorrect.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 20); and

2. the Court DENY Defendant's Motion for Summary Judgment, (ECF No. 22); and the Court REMAND this case to the Commissioner.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated:  February 12, 2014 /s/
Stephanie A. Gallagher
United States Magistrate Judge