# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NAM C. YU                 *

                           *

        v.              *        **Civil Case No. ELH-13-1507**

                            *

**COMMISSIONER, SOCIAL SECURITY**    *

                            *

                   *************

## AMENDED REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix).  On February 12, 2014, I issued a Report and Recommendations, which denied both motions and remanded the case to the Commissioner.  [ECF No. 26].  On February 25, 2014, the Commissioner filed an objection to the Report and Recommendations.  [ECF No. 27].  On February 26, 2014, the Plaintiff, Nam C. Yu, did the same.  [ECF No. 28].  Both parties also filed Responses to the other parties' objections.  [ECF Nos. 29, 30].  As a result, Judge Hollander referred both objections to me to address the issues raised by the parties.  [ECF No. 31].  This Amended Report and Recommendations supersedes the original Report and Recommendations in this matter.  I have considered all of the relevant filings.  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed.  42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011).  For the reasons set forth below, I recommend that both motions be denied and the case be remanded to the Commissioner.

Ms. Yu applied for Disability Insurance Benefits on July 14, 2009, alleging a disability

onset date of December 2, 1999. (Tr. 128-34). At the hearing, Ms. Yu amended her onset date to August 23, 2004, making the relevant period the roughly thirteen months between August 23, 2004 and her date last insured, September 30, 2005. (Tr. 38-39). Her claim was denied initially on March 26, 2010, and on reconsideration on October 25, 2010. (Tr. 69-71, 74-75). An Administrative Law Judge ("ALJ") held a hearing on November 17, 2011 (Tr. 35-66), and subsequently denied benefits to Ms. Yu in a written opinion dated January 26, 2012 (Tr. 26-34). The Appeals Council declined review, (Tr. 5-9), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Yu suffered from the severe impairment of ulcerative colitis. (Tr. 28). Despite this impairment, the ALJ determined that Ms. Yu retained the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) except could lift up to 25 pounds frequently and 50 occasionally, sit 2 hours, stand for six hours, during an eight-hour day, needing jobs requiring little communication, reading, or writing, and allowing her to have ready access to the bathroom when needed." (Tr. 30). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Yu could perform, and that she was not therefore disabled. (Tr. 33).

Ms. Yu disagrees. She presents four arguments on appeal. First, she argues that the ALJ erred by failing to heed her request to submit interrogatories to a medical expert. Pl.'s Mot. 13-16. Second, she argues that the ALJ improperly assessed her credibility. *Id.* at 16-18. Third, Ms. Yu suggests that the ALJ violated Social Security regulations by failing to consider her cultural background and linguistic limitations in a purported non-compliance determination. *Id.* at 18-20. Finally, Ms. Yu contends that the ALJ failed to include all of her limitations in the

hypothetical presented to the VE. *Id.* at 20-22. I find no merit to Ms. Yu's argument that the ALJ failed to consider her cultural background and linguistic limitations. However, I do find error with the ALJ's failure to determine whether Ms. Yu's post-DLI medical evidence establishes disability. I also find that the ALJ did not provide substantial evidence supporting his conclusion that Ms. Yu was capable of lifting 25 pounds frequently and 50 pounds occasionally, so as to be capable of performing medium work. *See* Tr. 30. I therefore recommend remand. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Yu is not entitled to benefits is correct or incorrect.

Initially, it is worth noting that the relevant period for which Ms. Yu was required to establish disability is very narrow. Given Ms. Yu's amended onset date and date last insured ("DLI"), the relevant time period stretches from August 23, 2004 to September 30, 2005. Ms. Yu's medical record, however, is devoid of any treatment records from late 1999 to early 2008.

I begin with Ms. Yu's unsuccessful argument. Ms. Yu contends that an ALJ is required to consider a claimant's cultural background, linguistic limitations, and other circumstances in any non-compliance determination, pursuant to 20 C.F.R. § 404.1530. The Social Security Administration will consider a claimant's "physical, mental, educational, and linguistic limitations (including any lack of facility with the English language)" when determining whether a claimant has an acceptable reason for failure to follow prescribed treatment. 20 C.F.R. § 404.1530(c). However, the ALJ made no such non-compliance determination here. The ALJ highlighted a 1999 post-examination report by Dr. Orkin, in which Dr. Orkin noted that Ms. Yu passes bowel movements each time she feels "the slightest urge," which amounts to approximately ten times a day. (Tr. 920). Dr. Orkin also stated that Ms. Yu was "paranoid" and needed to start "deferring her bowel movements." *Id.* The ALJ recited this evidence verbatim in

the context of a credibility analysis, not a non-compliance determination.  *See* (Tr. 32).   Still, Ms. Yu suggests that the ALJ should have considered her cultural and language barriers as part of the credibility analysis.  Pl.'s Mot. 19.  However, Ms. Yu does not explain how her cultural or linguistic limitations affect her case.  She notes that while her language barrier had no effect on her ability to follow medical advice, it could have affected her ability to fully understand her condition.  Pl.'s Mot. 19; Pl.'s Reply 9.   Ms. Yu's argument is merely speculative, and remand is not warranted on this basis.

Remand, however, is warranted because the ALJ failed to meet his duty of explanation regarding Ms. Yu's RFC, in which he concluded that Ms. Yu was capable of performing medium work and lifting 25 pounds frequently and 50 pounds occasionally.  *See Kotofski v. Astrue*, SKG-09-981, 2010 WL 3655541, at *4 (D. Md. Sept. 14, 2010) ("An ALJ's failure to explain would make the court's function on administrative appeal meaningless because, without such explanation, it would be impossible to ascertain whether the ALJ supported his assertions with substantial evidence.").  Given Ms. Yu's age of 55 at the time of her amended onset date, a finding by the ALJ that she was limited to light, unskilled work would have rendered her disabled, pursuant to Grid Rule 202.06.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06.  The ALJ's determination that Ms. Yu is capable of performing medium work precluded a finding of disability, and requires further explanation of his conclusion that a person with no colon and no rectum (Tr. 29, 333-37) could lift the amounts of weight required for medium work.  Given that the ALJ failed to support his RFC finding, I recommend remand for a more detailed analysis.

Ms. Yu next argues that the ALJ should have consulted a medical expert because her disability onset date was ambiguous, due to a lack of treatment records from November, 1999 to March, 2008.  Pl.'s Mot. 13-16; Pl.'s Reply 1-7.  Ms. Yu relies on Social Security Ruling

("SSR") 83-20 and *Bailey v. Chater*, 68 F.3d 75 (4th Cir. 1995). SSR 83-20 relates to the establishment of an onset date for an impairment. *See* SSR 83-20, 1983 WL 31249 (Jan. 1, 1983). The stated purpose of the ruling is to "state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act and implementing regulations." *Id.* at *1. The onset date of disability is defined as "the first day an individual is disabled as defined in the Act and the regulations." *Id.* SSR 83-20 describes how an onset date is determined. In cases where the disability is of non-traumatic origin, "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* In circumstances where, based on the medical evidence, it is reasonable to infer that, "the onset of a disabling impairment occurred some time prior to the date of the first recorded medical examination," the ALJ should make an informed judgment regarding how long the disease existed at a disabling level of severity. *Id.* at *3. This judgment must have a "legitimate medical basis" and the ALJ "should call on the services of a medical advisor when onset must be inferred." *Id.*

In *Bailey,* the court applied SSR 83-20 in addressing the ALJ's failure to consult a medical expert prior to inferring an onset date. The claimant in *Bailey* underwent a series of consultative examinations in May, 1992, which demonstrated significant deterioration in the claimant's functional abilities. *Bailey*, 68 F.3d at 77–78. The ALJ rejected the claimant's alleged disability onset date and arbitrarily inferred onset of six months prior to the date of the consultative examinations. *Id.* at 78. The court stated that the evidence of onset was ambiguous, and that the ALJ should have "procur[ed] the assistance of a medical advisor in order to render the informed judgment that [SSR 83-20] requires." *Id.* at 79. The court reasoned, "[t]he

requirement that, in all but the most plain cases, a medical advisor be consulted prior to inferring an onset date is merely a variation on the most pervasive theme in administrative law—that substantial evidence support an agency's decisions. *Id.* at 80.

SSR 83-20 "does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred." *Id.* at 79. The ALJ must first determine that a claimant is disabled before turning to SSR 83-20. *See Bird v. Comm'r of Social Sec. Admin.*, 699 F.3d 337, 344 (4th Cir. 2012). In *Bird*, as here, the claimant lacked medical records during the period between the alleged onset date and date last insured. *Bird*, 699 F.3d at 339. The ALJ pointed, in part, to the lack of medical records during the relevant period to conclude that, while the claimant suffered from post-traumatic stress disorder ("PTSD") before his DLI, his impairment was not severe enough to qualify him for disability benefits. *Id.* at 340. Of relevance here, the court addressed the claimant's argument that the ALJ erred by failing to consult a medical expert, because his record did not unambiguously establish the onset of his PTSD. *Id.* at 344. The court stated that, an ALJ is required to consult a medical advisor only "*after* the claimant has proved that his condition is disabling, but when the date of its onset remains ambiguous." *Bird*, 699 F.3d at 334 (emphasis in original). The court summarized that, "after considering all relevant evidence, and upon determining that the claimant was disabled *at any time*, an ALJ must consult with a medical advisor if the date of onset of the disability is ambiguous." *Id.* at 346 (emphasis added).

Here, the ALJ concluded that Ms. Yu was not disabled from her original alleged onset date through September 30, 2005, her DLI. (Tr. 34). However, the ALJ failed to consider whether Ms. Yu had become disabled *at any time*, as *Bird* instructs. In finding that Ms. Yu was not disabled, the ALJ did not clearly state whether Ms. Yu's post-DLI medical records factored

into his decision. "Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Bird*, 699 F.3d at 340. "[R]etrospective consideration of evidence is appropriate 'when the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." *Id.* at 341. Thus, the court in *Bird* concluded that the ALJ committed an error of law by failing to consider medical evidence after the claimant's DLI, where the medical evidence showed the claimant's history of PTSD dating back to a period before the DLI. *Id.* at 341-43. The Fourth Circuit noted that the claimant's psychological examinations and "lay evidence" described longstanding behavioral symptoms that were current, but hardly new. *Id.*

Ms. Yu's medical record contains evidence, both before and after her DLI, which demonstrates a frequent need to make bowel movements. *See e.g.*, (Tr. 227, 235, 264, 277-78, 300-03, 306). I note that the ALJ appears to suggest that around the time Ms. Yu filed for disability benefits, evidence in her record demonstrated a frequent need to use the restroom, which would have precluded competitive employment, rendering her disabled. *See* (Tr. 32) ("In terms of the claimant's alleged inability to work, as presented by her attorney, due to reduced work productivity because of a frequent need to use the bathroom...there is only current medical support for this."); (Tr. 32) ("Field office report of the claimant using the restroom every 30 minutes at initial application in 2009...cannot be extrapolated back to 2005...because the medical evidence at that time is not sufficient to support such supposition."). The Commissioner appears to agree that Ms. Yu's record "demonstrates onset in 2008." *See* Def.'s Mot. 11. Accordingly, remand is appropriate.[1] On remand, the ALJ should determine whether Ms. Yu's medical record

---

[1] Separately, on remand, the ALJ is not permitted to draw negative inferences due to a gap in the claimant's medical record, without hearing from a medical advisor. In *Blea v. Barnhart*, 466 F.3d 903

as a whole supports a disability finding at any time. If the ALJ finds that Ms. Yu was disabled at any time, and if the evidence of onset is ambiguous, the ALJ should consult a medical expert to determine the onset date.

Ms. Yu also makes arguments regarding the ALJ's credibility assessment and the hypothetical posed to the VE. Because both arguments are likely to be affected by the evidence to be considered and explained on remand, further analysis of those arguments at this time is unwarranted.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 20); and

2. the Court DENY Defendant's Motion for Summary Judgment, (ECF No. 22); and

3. the Court REMAND this case to the Commissioner.

Any objections to this amended Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: March 14 , 2014                               _____/s/_____

                                                     Stephanie A. Gallagher
                                                     United States Magistrate Judge

---

(10th Cir. 2006), to which the Fourth Circuit favorably cited in *Bird*, the claimant was entitled to benefits only if he could prove that he was disabled prior to December 31, 1998, his DLI. However, the claimant's medical evidence was devoid of any treatment records from June, 1998 to January, 2000. *Blea*, 466 F.3d at 912. The ALJ inferred from the lack of treatment records that the claimant's pain could not have been severe. *Id.* The Tenth Circuit stated that, "[a]n ALJ may not make negative inferences from an ambiguous record, rather it must call a medical advisor pursuant to SSR 83-20." *Id.*